Filed 4/2/25  P. v. Andrews CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DONNA LEE ANDREWS,<br><br>    Defendant and Appellant. | F088013<br><br>(Super. Ct. No. VCF142325)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy and Melinda Myrle Reed, Judges.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2006, defendant Donna Lee Andrews was sentenced to life imprisonment with the possibility of parole plus 25 years to life after being convicted of two counts of premeditated and deliberate attempted murder (Pen. Code, §§ 664, 187, subd. (a)) and three counts of assault with a semiautomatic firearm (§ 245, subd. (b)). (Undesignated statutory references are to the Penal Code.) The jury found true allegations defendant personally inflicted great bodily injury during the commission of each offense (§ 12022.7, subd. (a)); she personally used a firearm during the commission of the assaults with a semiautomatic firearm (§ 12022.5, subds. (a) & (d)); and defendant personally discharged a firearm and proximately caused great bodily injury or death (§ 12022.53, subd. (d)) during the commission of the attempted murders.

In 2022, the California Department of Corrections and Rehabilitation (CDCR) recommended recall and resentencing pursuant to section 1172.1 (former § 1170.03) based on the defendant's prison conduct. In March 2024, after holding a hearing, the court recalled defendant's sentence, dismissed several enhancements that were previously stayed or ordered to run concurrently, but otherwise sentenced defendant to the same term.

Defendant appeals from the court's order, arguing the court erred in failing to meaningfully modify her sentence and that it abused its discretion at resentencing. She also contends, and the People agree, the court erred in failing to update her custody credits at resentencing; so, the abstract of judgment must be modified.

We agree with the parties that the court erred in failing to update defendant's custody credits at resentencing; we remand for the court to recalculate defendant's custody credits at the time of the resentencing hearing and to prepare an amended abstract of judgment. In all other respects, we affirm the judgment.

# BACKGROUND

In 2006, a jury convicted defendant of two counts of premeditated and deliberate attempted murder of her daughter-in-law (§§ 664, 187, subd. (a); counts 1 & 2) and three counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 3, 4 & 5) after defendant shot a firearm twice, injuring her daughter-in-law and defendant's husband. The jury found true allegations defendant personally inflicted great bodily injury during the commission of each offense (§ 12022.7, subd. (a)), she personally used a firearm during the commission of the assaults with a semiautomatic firearm (12022.5, subds. (a) & (d)), and defendant personally discharged a firearm and proximately caused great bodily injury or death (§ 12022.53, subd. (d)) during the commission of the attempted murders.

The court sentenced defendant to a term of life with the possibility of parole on count 1 plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement, a concurrent term of life with the possibility of parole on count 2 plus 25 years to life for the section 12022.53, subdivision (d) firearm enhancement, a concurrent middle term of six years on count 3, plus four years for the section 12022.5, subdivisions (a) and (d) firearm enhancement. A three-year term for the great bodily injury enhancement attached to count 3 was ordered stayed pursuant to section 654. Defendant was also sentenced to the middle term of six years on counts 4 and 5, plus four years for the section 12022.5 firearm enhancements attached to each of those counts, sentences which the court ordered stayed pursuant to section 654.

On April 14, 2022, a letter from the Office of the Secretary of the CDCR was filed with the superior court "to provide the court with the authority to resentence [defendant] pursuant to … Section 1170.03 Subdivision (a)(1), based upon her exceptional conduct while incarcerated." The Secretary detailed that defendant "has remained disciplinary free since being received to the CDCR on June 23, 2006"; she is "currently assigned as a Law Library Clerk"; she "has not participated in any self-help groups since January of

3.

2020" but "previously received numerous certificates and laudatory chronos from group sponsors acknowledging her prior commitment and dedication to self-awareness and improvement groups"; and she "received three laudatory chronos from Correctional staff documenting her exceptional behavior during her incarceration." The Secretary recommended defendant's "sentence be recalled and that [s]he be resentenced" pursuant to former section 1170.03, subdivision (a)(1) and enclosed documentation for the court, specifically a "Cumulative Case Summary and Evaluation Report." The report included "factors that are applicable pursuant to the recommendation for Recall of Commitment based upon [defendant's] exceptional conduct," including details of the commitment offense, defendant's criminal and parole history, her "institutional adjustment," which noted laudatory chronos defendant received while incarcerated, her self-help activities such as participation in groups, trainings, and workshops, her medical/mental health status, support system, and notification requirements, and it noted that she is to have a parole consultation hearing conducted no later than March 10, 2025. The court appointed the public defender to represent defendant. The matter was also referred to probation for a full report and recommendation.

The People submitted a brief with points and authorities related to the section 1172.1 (former § 1170.03) resentencing. The People stated they opposed the request for resentencing and noted the presumption favoring resentencing can be overcome if the court finds that defendant is an unreasonable risk of danger to public safety.

Defendant filed a brief in support of recall and resentencing. She noted in part that she was 70 years old and had spent 18 years in custody. She asserted section 1172.1's presumption in favor of recall and resentencing cannot be overcome, in part, given her age. She argued there was "no evidence that a recall and resentencing of [her] convictions will pose an unreasonable risk to public safety." She noted, prior to the instant crime, she had no criminal history and had been working as a teacher. During the last 18 years "in custody, she had exemplary behavior which included no write-ups for

4.

rule-breaking, much less any crimes of violence, and treatment for her mental health issues." She asserted the offenses which led to her incarceration were "aberrant behavior." The brief noted defendant "suffered a very severe psychiatric problem in 2003." "She suffered a nervous breakdown; she became very delusional and psychotic; and her behavior became totally disorganized. She had left Visalia and drove over 7,000 miles, 'running away from ideas and thoughts' that [her husband] had sent people 'to eliminate her and so forth.' She was later found in San Diego and involuntarily committed to a mental facility for three days." The brief stated that Dr. Luis Velosa testified defendant stopped multiple medications at one time, including a weight loss treatment, that caused her psychotic condition during which she "experienced paranoid delusions that focused on" her husband. She was treated at a psychiatric facility, went through outpatient treatment, and was cleared to teach for the 2004–2005 school year. Then, in December of 2004 or January of 2005, defendant began taking a smaller dosage of another diet pill, though it was not clear if she was taking them at the time of the offense. The brief detailed that defendant shot the victim—her daughter-in-law—twice while at her house for dinner. Defendant then walked away from the scene and the police found her completely naked and crouched down in a trash can. She gave "bizarre" answers to questions and appeared "'disoriented or altered.'"

She stated the Secretary of the CDCR's letter "summarizes the CDC records," including that defendant had no prior or subsequent criminal convictions, no write-ups for rules violations while in custody, had not tested positive for controlled substances, had worked in various positions while in custody with above satisfactory or exceptional work performance reviews, and she participated in various trainings offered by the CDCR and in self-help groups while incarcerated. She asserted she had "sought to develop insight into the cause of her criminal acts and to be active in working to rehabilitate herself," referencing exhibits attached to her brief. She argued the court could and should dismiss the allegations that resulted in a life in prison sentence,

specifically the gun enhancements. She explained section 12022.53 was amended effective January 1, 2018 (Sen. Bill No. 620 (2017–2018 Reg. Sess.)) to permit the court to strike or dismiss an enhancement under that section, and *People v. Tirado* (2022) 12 Cal.5th 688, 697 held a court is not categorically prohibited from imposing a lesser included, uncharged gun enhancement if the facts supporting the lesser enhancement have been alleged and found true. She also asserted Senate Bill No. 81 (2021–2022 Reg. Sess.) amendments to section 1385, effective January 1, 2022, weighed in favor of dismissal of the sentencing enhancements. Specifically, the court had discretion under section 1385, subdivision (c) to strike the gun enhancements, and it should do so given the gun enhancements resulted in a sentence of over 20 years. She also asserted "the current offense is connected to mental illness," a mitigating circumstance, and multiple enhancements were alleged in this case. She also argued other considerations warranted dismissal of the gun enhancements: she "had a long history of stable employment as a teacher"; she had "now attained an advanced age"; she had "no prior or subsequent criminal record" or "rules violations while in custody"; and she had "made efforts to better herself while in custody so that she would not end up in the same cycle and repeat the mistakes that she made before her incarceration." She also asserted the court could and should dismiss the premeditation special allegation attached to counts 1 and 2 (the attempted murder convictions) under section 1385, subdivisions (a) and (c) in the interest of justice, asserting, in part, that *People v. Burke* (2023) 89 Cal.App.5th 237 was wrongly decided. She asked the court to resentence her to a determinate term of five, seven, or nine years in state prison for the attempted murder conviction. She also asked the court to impose the minimum fines and fees or hold a hearing regarding her ability to pay, noting the court originally imposed a statutory maximum of $10,000 for the restitution fine under section 1202.4, subdivision (b)(1) and a parole revocation fine in the same amount stayed by operation of law, as well as a $100 court assessment under section 1465.8.

In August 2023, the Tulare County Probation Department filed an updated memorandum with the court regarding possible resentencing pursuant to section 1172.1, subdivision (a), noting the department conducted a telephonic interview with defendant on July 31, 2023.  The memorandum states:  "Probation believes the defendant's only real consideration for relief in this matter is her current age (69), the length of time she has spent in custody and her exemplary behavior while in CDCR's custody.  All other factors disclosed in the most recent interview were either addressed in the trial or do not appear to be contributing factors in the commission of the offense pursuant to § 1172.1(a) PC."

The court held a hearing on August 4, 2023, during which victim impact statements were heard.  The court stated, "It seems clear to me that there was mental illness involved here.  [I]t's undisputed … based on the record that was presented at the trial and what I've heard otherwise."  The court also noted it was "undisputed" defendant had not "had any problems in the facility over the last 18 years and … she's used her time wisely," but there has been no "recent assessment of her mental health."  The court stated it intended to appoint its own expert to evaluate defendant because it did not see how it could "responsibly make this decision in the absence of a current opinion from a mental health professional as to where this defendant is" because there is not "adequate information here."

The parties stipulated to the release of defendant's mental health records while she was incarcerated, and the court appointed a medical expert, Dr. Laljit Sidhu, to evaluate defendant and render a report regarding whether defendant poses an unreasonable risk to public safety as defined in section 1170.18.

Dr. Sidhu's report was submitted to the court and states it was based on a review of records and an approximately 90-minute remote clinical interview conducted with defendant on December 8, 2023.  Dr. Sidhu detailed his interview with defendant and explained, with regard to her version of events related to the crime, defendant stated she

7.

was "'totally paranoid'" and "'not connecting with reality'" about a month prior to the incident. She stopped taking her psychiatric medication about a year before and started to use prescription diet pills prior to the incident. She had come to believe her husband and daughter-in-law were having an affair, and her daughter-in-law "was the object of her hatred." She reported being diagnosed with schizoaffective disorder for which she was prescribed risperidone. The report states: "A review of CDCR mental health records dated from 2011 through 2023 have consistently described her as stable and compliant with medication. There have been periods of depression and situational anxiety but no symptoms of a psychosis since her incarceration." Additionally, "[a] progress note, dated February 17, 2022 noted that she had been on medication since at least 2011 and has been stable since at least that time." With regard to her medical status, according to CDCR medical records, "she is diagnosed with a variety of age-related medical conditions, including chronic kidney disease, degenerative joint disease, hyperlipidemia, hypertension, inflammatory bowel disease, low back pain, intertrigo, lumbar spondylosis, and onychomycosis."

Dr. Sidhu included a section titled "Risk Analysis," evaluating whether defendant poses an unreasonable risk of public safety of committing a new violent felony within the meaning of section 667, subdivision (e)(2)(C)(iv). First, he noted defendant had no history of prior sexual offending so there "would be no basis to suggest that she has the potential to engage in a sexually violent offense, particularly as would be defined by [Welfare and Institutions Code] § 6600." He also stated her gender and age (70) suggested a very low base rate of reoffending. He discussed specific factors based on a "structured guided approach using the Female Additional Manual (FAM) for the third version of the HCR-20 [Historical Clinical Risk Management 20], a commonly used structured professional judgement tool … for risk factors specific to women and providing additional guidelines for other risk factors." With regard to historic factors, he noted, in part, defendant had a history of violence as she was serving a prison sentence

8.

for attempted murder, but she did not have a history of other antisocial behavior, entrenched attitudes supportive of violence, or a history of problems with substance abuse. He stated defendant had a history of problems with relationships, "a rather salient risk factor," and a history of problems with major mental disorder, though she did not have a "personality pathology." He further noted defendant had a history of problems with traumatic experience in that she had an unstable and abusive childhood that included emotional, physical, and sexual abuse and neglect. Most of the clinical risk factors were not present in defendant except low self-esteem, which was "partially present." The only "risk management factor" that was deemed to be possibly present, though not definite, was the potential for future problems with personal support/interpersonal contact with members in the individual's network.

In his "Summary of Findings," Dr. Sidhu opined defendant "does not pose an unreasonable risk for violence in general or specifically to the victim of her commitment offense." He again noted defendant's age (70), that she had been psychiatrically stable since her incarceration, compliant with rules and regulations of the prison, and "demonstrated good insight into her illness, actively participated in treatment, and been medication compliant." He also noted her plans for the future were logical and realistic. He explained risk assessment "is inherently probabilistic," yet, "on balance, there is little indication that [defendant] would meet the definition of 'unreasonable risk.'"

At a hearing on March 26, 2024, the defense stated it intended to submit on Dr. Sidhu's report, noting he was not retained by the defense but rather the court. However, because the prosecutor had "objections or mistaken issues with Dr. Sidhu's ultimate findings, they have requested that he come and testify in this proceeding." Accordingly, the defense stated it would "do a brief direct examination as to the contents of his report."

Dr. Sidhu then testified he is a licensed psychologist and his role in this matter "was fairly limited." He was "to conduct a risk assessment on [defendant], to determine

9.

whether she specifically met the criteria for a specific types [*sic*] of violence." He noted defendant was previously diagnosed with bipolar disorder but was now diagnosed with schizoaffective disorder, which is essentially a "sort of mood disorder … coupled with the psychosis." He explained the disorder is treated through medication, education, and therapy. He stated defendant had fully complied with her treatment as far as he could tell. He explained that he used a structured professional judgment approach, HCR-20, to assess defendant. His overall determination was that defendant did not meet "the threshold for unreasonable risk" nor pose an "unreasonable risk" specifically toward her former daughter-in-law. However, he noted her failure to continue to take medication could lead to reemergence of symptoms as it had in the past. He noted "[t]hat's what happened in 2003"; "[o]nce she stopped taking her medication, she ended up falling back into the pattern of using diet pills and so forth because her depression reemerged, her low self-esteem reemerged." He testified he believed defendant was likely to continue taking her medication based on the fact she took it consistently in prison, but noted this was one of the concerns in this case. He conceded defendant had a history of going on and off her medications before she was in prison, which can be a fairly good predictor of the future, and if she is not on her medications it could potentially lead to a bad result. He testified he would not have had the same risk assessment if defendant was not on her medications. He stated she had not had substantial symptoms of mania or psychosis since 2007 but had auditory hallucinations, a sign of psychosis, since 2011.

The court explained,

"[T]he presumption at issue in the code under [section] 1172.1 favors recall of the defendant's sentence unless there's a showing that defendant poses an unreasonable risk of danger to public safety. [T]he presumption only applies to the initial determination of whether to give the defendant the opportunity for resentencing. [¶] The Court retains discretion in determining the sentence that is ultimately imposed without any further application of the presumption. [¶] Put another way, the code provides for a presumption in favor of recalling, but not in favor of a particular

10.

sentence." The court stated it was "prepared to find that the presumption favoring recall has been met, and that now we are at the stage of resentencing and whether that will change in any regard."

The prosecutor argued Dr. Sidhu testified "individuals who have a psychiatric disorder are at a higher risk than people who don't." Dr. Sidhu also testified it was "not uncommon for people with [defendant's] condition to not stay on their medications," and his "risk assessment would not be as is if she went off her medications"; so, "that's an unreasonable risk" to society and the victim in this case. The prosecutor argued there was also testimony defendant reported she got a divorce "to avoid paying money to the victim, and she felt the victim was taking all of the things that she and her husband had saved up to get during the course of their marriage. So there's going to be an anger based on that, as well as the delusional jealousy." He argued, for that reason, she posed "an unacceptable risk and should not be resentenced."

Defense counsel argued the "risk that is being assessed here is an unreasonable risk of danger to public safety as defined in Subdivision (c) of Section 1170.18, which means that the Court has to find that there's an unreasonable risk that [defendant] is going to commit one of an enumerated list of offenses, the so called super strikes." He asserted the presumption in favor of recall and resentencing should apply because there was nothing before the court to indicate that defendant poses any level of risk of committing that type of offense. He further asserted defendant's position "that the new sentence, if any, should be no greater than the initial sentence that was imposed."

The court again stated its conclusion that the presumption had not been rebutted so it would move forward with resentencing, though it noted the "presumption has no application as to what the Court must or must not do in resentencing." The prosecution then presented statements from the victim, her husband, and her sister. The prosecutor noted the original court "gave the defendant a great benefit by running the sentences concurrently," though the offenses were distinct. He argued, "There doesn't seem to be any reason to resentence the defendant in this case."

11.

Defense counsel confirmed for the court that defendant would be eligible for elder-offender parole "as soon as March [2025]." Defense counsel did not have information with regard to how much of the $10,000 restitution fine was left to be paid and the court concluded that "[w]ithout that critical information, how much she's earned so far and her ability to pay on that," it would deny the request for reduction of the restitution fine without prejudice.

Defense counsel then asked the court to resentence defendant effectively to time-served but requested that release be "delayed at least one month to allow [defendant] time for release planning … to ensure that she is set up for success on parole and any future placement." He asserted defendant had taken advantage of every rehabilitative resource available to her and sought out others on her own, participated in dozens if not hundreds of classes, programs, and counseling sessions, been completely medication compliant, had no prior criminal record, and received no disciplinary write-ups in her 20 years in custody.

The court noted that, during a resentencing under section 1172.1, it was "required to apply any changes in the law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences" and "to consider post-conviction factors, including the defendant's disciplinary record and record of rehabilitation." The court explained:

> "Here, as to changes in the law that could reduce the defendant's sentence, … Section 1385[, subdivision] (c) is implicated. That section requires the Court, in the interest of justice, to dismiss enhancements when there are multiple enhancements and when the application of an enhancement can result in a sentence of over 20 years. Both factors are applicable in this case.

> "The code also requires consideration of dismissal of enhancements when the current offense is connected to mental illness and/or to childhood trauma. As to these factors, while there is some evidence of a mental condition contributing to the underlying offense, I don't find that it rises to the level of a condition that justifies dismissal of enhancements in the furtherance of justice.

12.

"Further, defendant's mental condition appears to contribute perhaps significantly to her risk of danger to public safety in the future. [¶] The jury also clearly rejected any deficient mental condition in finding that the attempted murders were willful, deliberate, and premeditated.

"I find that the defendant's childhood trauma is not sufficiently connected to the current offense. That is based on evidence of defendant's gainful employment throughout her adult life, including a successful and long-term teaching career. She was gainfully employed as a teacher at the time of the offense.

"As to consideration of defendant's prison record, she is disciplinary-free and has prolonged participation in rehabilitative programs. [¶] And, also, in defendant's favor is Dr. Sidhu's opinion that defendant does not pose a risk of violence to society or to the victim, although the Court does find it noteworthy and does share the doctor's concern that there is some risk based on defendant's long history of low self-esteem and poor relationship dynamics. [¶] Also, the Court finds noteworthy the doctor's acknowledgement here today that defendant has suffered from paranoia which does contribute to her psychosis that is at issue with defendant's mental condition.

"As to the underlying convictions, defendant was sentenced for the willful, deliberate, and premeditated shooting of her daughter-in-law, and assault on her husband with a semiautomatic handgun while at a family dinner. [¶] The offenses involved great violence and acts disclosing a high degree of cruelty, viciousness, and callousness. [¶] The victims were particularly vulnerable at the time of the offense. They were unarmed and at a family gathering. [¶] Moreover, defendant was convicted for crimes for which consecutive sentences could have been imposed. [¶] … [¶] The Court knows that the pain from the defendant's actions continues to severely impact the victim and her family.

"In sum, the Court has considered the Department of Correction's request, the factors favoring recall and resentencing, the changes in the sentencing laws, the circumstances of the offense, the defendant's brief in support of resentencing with attachments, and the statements of the victims."

The court then "exercise[d] its discretion and determine[d] in the interest of justice" it would resentence defendant to the same term on count 1 (attempted murder)—life with the possibility of parole plus a consecutive term of 25 years to life on the section

13.

12022.53, subdivision (d) firearm enhancement; the section 12022.7, subdivision (a) great bodily injury enhancement was ordered stayed pursuant to section 654. For count 2 (attempted murder), defendant was resentenced to a concurrent term of life with the possibility of parole; the section 12022.53, subdivision (d) enhancement and section 12022.7, subdivision (a) enhancement were ordered dismissed pursuant to "the new laws," specifically section 1385, subdivision (c). On count 3 (assault with a semiautomatic firearm), defendant was resentenced to a concurrent term of six years plus the middle term of four years for the section 12022.5, subdivision (a) enhancement. Defendant was also resentenced to the same middle terms of six years on counts 4 and 5, terms that were ordered stayed pursuant to section 654; the section 12022.5, subdivisions (a) and (d) enhancements attached to those counts were ordered dismissed under section 1385, subdivision (c). With regard to custody credits, the court found "no need for any credit update as she has never been transferred from [the Department of Corrections] and is assumingly receiving the prison conduct credits."

The court stated: "In sum and in short, the total term of defendant's sentence is not changed, but the Court has complied with the code, again, in regard to the multiple enhancements."

## DISCUSSION

Defendant appeals from the court's resentencing order, arguing the court erred by failing to meaningfully modify her sentence, and it abused its discretion at resentencing. Defendant also contends, and the People agree, the court erred in failing to update her custody credits at resentencing.

## I.      Standard of Review

"We review de novo questions of statutory construction." (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.) "'"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's

purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]"  [Citation.]  "'When the language of a statute is clear, we need go no further.'  [Citation.]  But where a statute's terms are unclear or ambiguous, we may 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'"""  (*People v. Scott* (2014) 58 Cal.4th 1415, 1421; accord, *People v. Blackburn*, *supra*, at p. 1123 ["'If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls'"].)

## II.     Applicable Law

### A.     Section 1172.1 Resentencing

Section 1172.1 (former § 1170.03)[1] provides a procedure by which a court may "at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of a defendant incarcerated in state prison, … recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." (*Id.*, subd. (a).)

---

[1]Assembly Bill No. 1540 (2021–2022 Reg. Sess.) moved the recall and resentencing provisions of former section 1170, subdivision (d)(1) to section 1170.03 effective January 1, 2022.  (Stats. 2021, ch. 719, §§ 1–3.)  It also clarified many of the required procedures under this section.  (See *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1041 ["[T]he Legislature repeatedly indicated that Assembly Bill 1540 was intended to 'make clarifying changes' to former section 1170(d)(1), including specifying the required procedure and guidelines when the CDCR recommends recall and resentencing"].)  Assembly Bill No. 200 (2021–2022 Reg. Sess.) then renumbered section 1170.03 to section 1172.1 effective June 30, 2022, but made no substantive changes.  (Stats. 2022, ch. 58, § 9.)  For the sake of clarity and consistency, we refer to section 1172.1 when addressing the statute governing the resentencing.

This section also provides, where a resentencing request is made, there is now a presumption in favor of recall and resentencing of the defendant, "'which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety,'" as defined in subdivision (c) of section 1170.18. (*People v. McMurray*, *supra*, 76 Cal.App.5th at p. 1040; accord, § 1172.1, subd. (b)(2).) Additionally, "[w]here, as here, the CDCR recommends recall and resentencing, the court is also now required to hold a hearing (unless the parties otherwise stipulate), state on the record its reasons for its decision, provide notice to the defendant, and appoint counsel for the defendant." (*McMurray*, *supra*, at p. 1040; accord, § 1172.1, subds. (a)(7), (9), (b)(1).) Furthermore, when recalling and resentencing pursuant to its provisions, the court "shall … apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2); see *McMurray*, at p. 1041.)

## B. Assembly Bill No. 600

Effective January 1, 2024, Assembly Bill No. 600 (2023–2024 Reg. Sess.) (Assembly Bill 600) amended section 1172.1, in part, by permitting the trial court, "within 120 days of the date of commitment *or at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law,* … [to] recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence.…" (*Id.*, subd. (a)(1), italics added.) The uncodified text of Assembly Bill 600 states, "[t]he Legislature finds and declares all of the following:

"(a) It is the intent of the Legislature that, in resentencing proceedings pursuant to Section 1172.1 …, all ameliorative laws and court

16.

decisions allowing discretionary relief should be applied regardless of the date of the offense or conviction.

"(b) It is the further intent of the Legislature that courts have full discretion in resentencing proceedings pursuant to Section 1172.1 … to reconsider past decisions to impose prior strikes. The list of factors considered in *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, is not exhaustive. Courts should consider Section 1385 …, postconviction factors, or any other evidence that continued incarceration is no longer in the interests of justice.

"(c) Consistent with the California Racial Justice Act, it is the intent of the Legislature to provide remedies that ameliorate discriminative practices in the criminal justice system, including discrimination in seeking or obtaining convictions or imposing sentences.

"(d) It is the intent of the Legislature that, *in cases where the judge concludes that recall and resentencing pursuant to Section 1172.1 … is appropriate*, *the resentencing result in a meaningful modification. 'Meaningful modification' means it will cause some actual change in the person's circumstances*, *including*, *but not limited to*, *immediate release*, *earlier release*, *and newly acquired entitlement to review by the Board of Parole Hearings or the advancement of eligibility for a parole hearing*." (Stats. 2023, ch. 446, § 1, italics added.)

### C.     *People v. Braggs*

In *People v. Braggs* (2022) 85 Cal.App.5th 809 (*Braggs*), the CDCR recommended the defendant's sentence be recalled in light of the court's newfound discretion to strike a consecutive enhancement pursuant to section 667, subdivision (a)(1) (authority which did not exist at the time of the defendant's sentencing). (*Braggs*, at p. 813.) After initially declining to resentence the defendant, the court decided to recall the defendant's sentence and resentence him.[2] (*Id*. at pp. 814–815.) The court then struck the 2 one-year prior prison enhancements because they were no longer legally valid, but

---

[2]The trial court initially denied the request to recall defendant's sentence, determining the statutory amendments giving it discretion to strike the prior serious felony enhancement did not apply to cases that were final. (*Braggs*, *supra*, 85 Cal.App.5th at p. 814.) The defendant filed a motion for reconsideration and, after hearing argument from the parties, the court stated it was recalling defendant's sentence and resentencing him. (*Id*. at p. 815.)

reimposed the middle term (six years) and the five-year prior serious felony enhancement. (*Id.* at pp. 815–816.) On appeal, the defendant argued the court failed to apply the new statutory "'*presumption favoring recall and resentencing*'" (italics added) that went into effect days before the resentencing hearing. (*Id.* at pp. 816, 818–819.) Alternatively, he argued "the court's denial was … an abuse of discretion because nothing in the record supports a finding that he is an unreasonable risk of danger to public safety." (*Id.* at p. 819.)

The *Braggs* court concluded the defendant was not prejudiced by any alleged failure of the court to apply the presumption or the purported lack of evidence to support a finding overcoming the presumption, reasoning "[t]he court in this case in fact *recalled* [the] defendant's sentence and *resentenced* him." (*Braggs*, *supra*, 85 Cal.App.5th at p. 819.) The *Braggs* court observed, "Although on resentencing, the court did not strike the prior serious felony enhancement as discussed in the Secretary's letter, nothing in former section 1170.03 or current section 1172.1 provides for a presumption in favor of the Secretary's *particular* recommended sentence. Rather, the statute provides for a presumption regarding recalling and resentencing a defendant, but not a presumption as to a particular sentence recommended by the Secretary." (*Ibid.*)

## III.    Analysis

Defendant challenges the trial court's resentencing order on two grounds. She first asserts the court misunderstood its discretion and misapplied the presumption at resentencing. Next, she contends the court abused its discretion at resentencing in concluding she posed a danger to public safety. We address and reject each of these arguments in turn.

### A.    The Court Did Not Misunderstand the Scope of Its Discretion

Defendant first argues the court misunderstood section 1172.1 and abused its discretion "under the totality of the circumstances of this case," and remand for

resentencing is required. She argues in Assembly Bill 600, "the Legislature stated a clear intent that once a sentence is recalled, the resentencing would result in 'meaningful modification;' i.e., some actual change in the person's circumstances, not an imposition of sentence that provides no benefit." She contends the court "misunderstood or misapplied the statute and thus abused its discretion by failing to consider the presumption for resentencing to provide a meaningful modification of sentence where it implicitly found in recalling the sentence that … [defendant's] circumstances have changed since first placed into custody and she is now not an unreasonable risk of danger to public safety as defined in subdivision (c) of section 1170.18." Relatedly, she asserts *Braggs*, *supra*, 85 Cal.App.5th 809 "was wrongly decided, has been repudiated by the Legislature, and is not dispositive in this case." Specifically, she argues, the statement of legislative intent in Assembly Bill 600 "in essence repudiated *Braggs*' conclusion to the extent it is read to permit a court to leave a defendant in the identical position she was in without recall." And, "even under *Braggs*' implicit reasoning that a court retains its sentencing discretion under section 1385 and is not *mandated to blanketly adopt* CDCR's sentencing recommendation, nevertheless the statute provides for a *presumption* favoring the resentencing as recommended." She contends *Braggs* implicitly found there is ambiguity in the statute's language that there is a presumption "favoring recall *and* resentencing of the defendant," and, to the extent there is ambiguity in this language, section 1172.1, "subdivision (a)(3) and the Legislature's statement of intent in AB 600 make clear that the presumption favoring recall and resentencing when applied … is to be applied to provide a meaningful change of circumstances in the form of a reduction of a defendant's sentence and opportunity for earlier parole consideration, not simply to go through the motions of recalling a sentence just to maintain the status quo." We disagree with defendant's contentions.

As the People aptly note, the Legislature did not include the phrase "meaningful modification" in section 1172.1 nor provide any directive about the extent to which a

court must reduce a defendant's sentence. To the contrary, the plain language of section 1172.1 provides that the court may "resentence the defendant in the same manner as if they had not previously been sentenced, … provided the new sentence, if any, is no greater than the initial sentence." (*Id.*, subd. (a)(1).) "Insofar as it is not limited by other phrases in the subdivision, the 'as if' language indicates that the resentencing authority conferred by section 117[2.1, subdivision (a)(1)] is as broad as that possessed by the court when the original sentence was pronounced."[3] (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 456; see generally *People v. Padilla* (2022) 13 Cal.5th 152, 163 ["once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence"].) Thus, the clear and unambiguous language of the statute establishes the trial court has broad discretion in resentencing a defendant; it does not limit the court's sentencing authority beyond requiring that a "new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).) Thus, we need go no further in interpreting the statute. (See *People v. Canty* (2004) 32 Cal.4th 1266, 1276 ["If the language [of a statute] is clear and unambiguous, we follow the plain meaning"]

Indeed, section 1172.1, subdivision (a)(3) provides "[t]he resentencing court *may*, in the interest of justice and regardless of whether the original sentence was imposed after

---

[3]Notably, section 1172.1 instructs the court to consider various factors in recalling and resentencing a defendant. (See § 1172.1, subd. (a)(5) ["In recalling and resentencing pursuant to this provision, the court shall consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice.… The court shall consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, if the defendant was a victim of intimate partner violence or human trafficking prior to or at the time of the commission of the offense, or if the defendant is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense"].)

a trial or plea agreement, do the following:  [¶] (A) Reduce a defendant's term of imprisonment by modifying the sentence.  [¶] (B) Vacate the defendant's conviction and impose judgment on any necessarily included lesser offense or lesser related offense, whether or not that offense was charged in the original pleading, with the concurrence of the defendant, and then resentence the defendant to a reduced term of imprisonment." (Italics added.)  The use of the term "may" in this section is in contrast to the use of the term "shall" in other parts of the statute, particularly when considered in conjunction with the broad resentencing authority conferred by section 1172.1, subdivision (a)(1), reinforces that the court may, but is not required to, reduce a defendant's sentence during resentencing in the interest of justice.  (See *Tarrant Bell Property*, *LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 ["Under 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory, 'particularly' when a single statute uses both terms. [Citation.]  In other words, '[w]hen the Legislature has, as here, used both '"shall"' and '"may"' in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively'"]; see generally *People v. Moine* (2021) 62 Cal.App.5th 440, 448 ["[I]n delineating the trial court's authority by use of the word 'may,' the statutory language itself indicates the trial court has broad discretion to grant or deny diversion"].)

Defendant seeks to avoid this conclusion by suggesting the language in section 1172.1, subdivision (b)(2)—"[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18"—is ambiguous.  She argues this provision should be interpreted to require a presumption in favor of a meaningful change of circumstances in the form of a reduction of a defendant's sentence.  We disagree.

We cannot conclude this language is ambiguous such that it should be interpreted in the manner defendant suggests. Rather, Assembly Bill 600 modified certain aspects of section 1172.1, but left unchanged the broad discretion afforded to courts in subdivision (a)(1) and (3) and the language that "[t]here shall be a presumption favoring recall and resentencing of the defendant" in subdivision (b)(2). To interpret section 1172.1 as defendant suggests would require us to insert additional language into the statute, which "'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes.'" (*People v. Guzman* (2005) 35 Cal.4th 577, 587.) Relatedly, we cannot conclude the holding in *Braggs*, *supra*, 85 Cal.App.5th 809—that "the statute provides for a presumption regarding recalling and resentencing a defendant, but not a presumption as to a particular sentence recommended by the Secretary" (*id.* at p. 819)— has been repudiated. Rather, "when as here '"a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." [Citations.]" "There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts."'" (*People v. Meloney* (2003) 30 Cal.4th 1145, 1161.) And here, as discussed, in amending the text of section 1172.1 pursuant to Assembly Bill 600, the Legislature left untouched the language of section 1172.1, subdivision (b)(2) regarding the "presumption favoring recall and resentencing of the defendant," thereby adopting the construction placed on the statute by the courts.

Accordingly, we cannot conclude the court misunderstood the scope of its discretion in the manner defendant contends.

## B.     The Court Did Not Err in Exercising Its Discretion at Resentencing

Defendant also argues the court abused its discretion because its resentencing determination was based on a conclusion not supported by the evidence and it failed to

give adequate weight to changed circumstances. Specifically, she argues the court's statements that evidence of her mental condition did not justify dismissing enhancements in furtherance of justice reflect the court did not "give adequate weight to the significant change in circumstances" in defendant, and the appointed expert's opinion that she is no longer a danger to the public or the complainant and has demonstrated she will remain compliant with mental health treatment and medication. She asserts, in recalling and resentencing defendant the court implicitly found the presumption in favor of recall and resentencing had not been overcome based on a risk of danger to public safety, and "there was simply no evidence upon which the trial court could have legitimately relied for its conclusion that [defendant] posed an unreasonable risk of danger to public safety if released." Again, we disagree with defendant's contentions.

Initially, we review a resentencing order for abuse of discretion (see *People v. Frazier* (2020) 55 Cal.App.5th 858, 863), and we will not disturb the order absent a showing the resentencing court exercised its discretion in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (*People v. Mendez* (2021) 69 Cal.App.5th 347, 353.) Here, we cannot conclude the court abused its broad discretion in resentencing defendant.

The court expressly considered, on the record, the postconviction factors provided in section 1172.1, subdivision (a)(5) before resentencing defendant. It discussed these factors as well as the circumstances of the offense and other evidence related to resentencing and the changes to section 1385 to the extent they applied at resentencing. And, contrary to defendant's contention, there is evidence in the record to support the court's finding that "defendant's mental condition appears to contribute perhaps significantly to her risk of danger to public safety in the future." Dr. Sidhu evaluated the risk defendant would commit a super strike. He expressly testified that his risk assessment was made with the assumption that defendant would continue to comply with her medication regimen if released. He acknowledged defendant had issues in the past,

23.

when not in custody, in taking her medications as required. And he further noted his risk assessment would be different if defendant did not take her required medications. Such testimony provided substantial evidence to support the trial court's factual finding that defendant's mental condition appears to contribute perhaps significantly to her risk of danger to public safety. Notably, this was one among the many factors the court considered in resentencing defendant. We conclude the court did not err by considering the potential risk defendant posed to public safety among other factors in resentencing, despite its conclusion the presumption in favor of recall and resentencing had not been rebutted, as the dangerousness inquiry in that regard is distinct. (See *Braggs*, *supra*, 85 Cal.App.5th at p. 819.) Rather, the court appears to have considered the relevant circumstances, and its factual findings were supported by the record. We cannot conclude its resentencing decision was irrational or arbitrary or that the court otherwise abused its discretion in rendering its resentencing decision. (See *People v. Clancy* (2013) 56 Cal.4th 562, 578 [under an abuse of discretion standard, "'we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious'"]; *People v. Garcia* (2024) 101 Cal.App.5th 848, 857 [same]; accord, *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 ["A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence"].)

The circumstances here are distinct from those in *Nijmeddin v. Superior Court* (2023) 90 Cal.App.5th 77 (*Nijmeddin*) and *People v. Lewis* (2024) 101 Cal.App.5th 401 (*Lewis*), upon which defendant relies. In *Nijmeddin*, the parties and the Court of Appeal agreed the trial court abused its discretion when it refused to recall the petitioner's sentence after he was recommended for, and presumptively entitled to, compassionate release. (*Nijmeddin*, at p. 83.) The *Nijmeddin* court explained, "The trial court made no findings as to the unreasonable risk of commission of 'super strike' offenses; it simply expressed a generalized concern about petitioner's 'ability to continue to commit

crimes,'" and the record lacked "any substantial evidence that [the petitioner] … 'is an unreasonable risk of danger to public safety.'" (*Ibid.*)  Similarly, in *Lewis*, the court concluded the trial court abused its discretion when it refused to recall the defendant's sentence after he was recommended for, and presumptively entitled to, compassionate release.  (*Lewis*, at pp. 408–409.)  The *Lewis* court concluded the trial court's finding the defendant posed an unreasonable risk of danger to public safety by committing a super strike offense was not supported by substantial evidence; rather, there was "no evidence supporting the finding that Lewis poses an unreasonable risk of committing a super strike."  (*Id*. at p. 411.)

First, unlike in *Nijmeddin* and *Lewis*, the court here concluded the presumption in favor of recall and resentencing had not been rebutted, and it proceeded to recall and resentencing.  Thus, the posture of this case and the related considerations are distinct; so, *Nijmeddin* and *Lewis* are inapposite.  Furthermore, the court had broad discretion in resentencing defendant, and there was substantial evidence in the record to support its factual findings as they related to its resentencing decision.

## IV.    Defendant's Custody Credits Must Be Updated

Defendant also asserts the trial court erred in failing to recalculate her custody credits at resentencing.  She contends she is "entitled to an award of an additional 6508 actual custody days, which in turn when added to the 449 actual days already awarded should have resulted in a total of 6957 presentence actual days credit."  She asks us to direct the superior court to amend the abstract of judgment to reflect a total of 6,957 actual days/custody credits plus the 67 conduct credits previously awarded, for a total of 7,024 presentence credits.  The People agree the court erred in failing to recalculate defendant's custody credits at resentencing, and they assert we should direct the trial court on remand to recalculate defendant's custody credits to reflect the actual time

25.

credits as of the date of resentencing.  The People do not expressly agree or disagree with defendant's calculation of credit.

Section 2900.5 provides for the application of custody credit to a defendant's term of imprisonment:  "In all felony … convictions, … when the defendant has been in custody, … all days of custody of the defendant … shall be credited upon his or her term of imprisonment …."  (*Id.*, subd. (a).)  And the California Supreme Court has held, "When, as here, an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the *actual time* the defendant has already served and credit that time against the 'subsequent sentence.'"  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23.)

We agree with the parties the abstract of judgment must be corrected to reflect defendant's custody credit at the time of resentencing.  At the initial sentencing hearing held on June 1, 2006, the court awarded defendant 449 days of custody credits, plus 67 days for conduct credits, for a total of 516 days of credit.  The original probation report reflects defendant was in custody from March 10, 2005 to May 22, 2006, for a period of 439 days, plus 77 days' credit pursuant to section 2933.1, for total credit of 516 days.  The updated probation report reflects defendant was in custody from March 10, 2005 to June 22, 2006, for 470 days and then from June 23, 2006 to August 4, 2023, for a period of 6,252 days, totaling 6,722 days of custody as of August 4, 2023.  However, the resentencing hearing in this matter was held on March 26, 2024.

Considering the lack of affirmative evidence verifying defendant's custody status from the time of her arrest until the date of the resentencing hearing, we conclude a remand is appropriate for the trial court to verify the dates defendant was in custody. (See *In re Antwon R.* (2001) 87 Cal.App.4th 348, 353 [remand appropriate for trial court to calculate custody credit where record does not provide enough information to calculate credit on appeal].)  Accordingly, we remand the matter for the court to recalculate the

correct amount of custody credit and to issue an updated abstract of judgment reflecting this change.

## DISPOSITION

The matter is remanded for a recalculation of defendant's custody credit as of the date of the resentencing hearing and for the preparation of an amended abstract of judgment reflecting such credit.  In all other respects, the judgment is affirmed.


                                                         PEÑA, Acting P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.